**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**CIVIL ACTION NO. 4:12-CV-00104-JHM-HBB**

**TANIA R. DONAHOO, as the Personal**
**Representative of the Estate of**
**Beulah D. Pirtle, and**
**JAMES W. PIRTLE, JR.**                                                **PLAINTIFFS**

**V.**

**CSX TRANSPORTATION, INC. and**
**CSX CORPORATION**                                                     **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Defendant CSX Transportation, Inc.'s Motion for Judgment on the Pleadings [DN 25]. Fully briefed, this matter is ripe for decision. For the following reasons, Defendant's motion is **GRANTED**.

**I. BACKGROUND**

On September 9, 2011, Beulah Pirtle was driving southbound on U.S. 41 in Webster County, Kentucky when she turned onto Sebree Springs Road. Mrs. Pirtle proceeded over a railroad crossing where her vehicle was struck by a train that was owned and operated by Defendants. Mrs. Pirtle's husband and the personal representative of her estate filed this lawsuit seeking damages. According to them, the train never entered Mrs. Pirtle's field of vision and she was never provided a warning or a reason to yield to it. Defendant CSX Transportation, Inc. ("CSXT") filed a motion for judgment on the pleadings under Rule 12(c), arguing that "Count XVI and Count XVII" must be dismissed. (Def. CSX Transp., Inc.'s Mot. for J. on the Pleadings [DN 25] 1.)[1] The Court considers this motion below.

---

[1] Rule 12(c) states that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Rule 12(h)(2) states that "[f]ailure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c)."

## II. STANDARD OF REVIEW

"The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." Fritz v. Charter Tp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (citing Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 511–12 (6th Cir. 2001)). Upon a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff[]," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), accepting all of the plaintiff's allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for his entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint falls short if it pleads facts that are merely "consistent with a defendant's liability" or if the facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 678–79. Instead, the allegations must "'show[] that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

### A. "XVI. OPERATION LIFESAVER"

In Plaintiffs' complaint under a heading entitled "XVI. Operation Lifesaver," Plaintiffs allege that "Defendant Railroad uses a program called 'Operation Lifesaver' as its primary crossing safety program" and that this program "is part of an industry wide public relations campaign created to serve the . . . special interests of the railroad industry." (Compl. [DN 1] ¶ 65.) Moreover, Plaintiffs

allege that "Defendant Railroad has misrepresented its Operation Lifesaver public relations campaign to be a safety program in an attempted [sic] to obscure the fact that Defendant Railroad actually has no comprehensive crossing safety program of its own." (Id.) According to Plaintiffs, Defendant CSXT has used this program "to indoctrinate railroad employees with a belief system that there is nothing they can do to improve public safety at grade crossings," despite having "knowledge that it is endangering the public by allowing . . . hazardous conditions and practices . . . ." (Id. ¶¶ 66–67.)

In its motion to dismiss, Defendant CSXT contends that this "Operation Lifesaver" claim of Plaintiff's complaint, found in "Count XVI," fails to state a claim upon which relief can be granted. According to CSXT, "[a] review of Kentucky authority reveals no case that suggests that merely utilizing a public relations campaign that provides information to the motoring public gives rise to a cause of action against the party utilizing the campaign by a motorist involved in an intersection collision." (Mem. in Supp. of Def. CSXT's Mot. for J. on the Pleadings [DN 25-1] 5.) Further, CSXT argues that Plaintiffs' claim must be dismissed since it is essentially a claim for fraud and since Plaintiffs have failed to satisfy the specificity requirement of Rule 9(b). CSXT maintains that Plaintiffs do not "identify the substance of the allegedly false and misleading information, the facts misrepresented, nor the time and place at which the allegedly false information was disseminated." (Id. at 6.)

The Court agrees with CSXT that Plaintiffs' "Operation Lifesaver" claim must be dismissed. In support of this holding, the Court finds Stevenson v. Union Pacific R.R. Co., No. 2:99-CV-00160 (E.D. Ark. Nov. 6, 2000), instructive. In that case, the district court explained the plaintiffs' argument, noting that the plaintiffs alleged that Operation Lifesaver "assumed a 'special duty' . . . because it holds itself out as an organization dedicated to the safety of the motoring public who come in contact with it, and because the program increases the risk of injury or death to motorists by creating an

illusion of safety for the railroad industry's practices." (Order [DN 25-2] 2.) The plaintiffs also alleged that Operation Lifesaver created a public perception of safety by "assuming that a reasonable driver who looked and listened would not be at risk of being hit by a train at a crossing." (Id. at 3.) However, the district court rejected these arguments, relying instead on Arkansas Carpenters' Health & Welfare Fund v. Philip Morris, Inc., 75 F. Supp. 2d 936, 944 (E.D. Ark. 1999).

In Arkansas Carpenters' Health & Welfare Fund v. Philip Morris, Inc., the plaintiff argued that the defendants, by running advertisements related to tobacco related health issues, had taken on a special duty to act as a sort of guardian as public health with regard to tobacco products. But the court found "no Arkansas case even remotely suggesting that one can assume the sort of 'special responsibility' plaintiff describes simply by placing advertisements or issuing corporate statements." Id. Here, the same result follows. At its core, Plaintiffs are attempting to hold CSXT liable because it utilized a public relations campaign that provides information to the motoring public. However, Plaintiffs have cited no cases suggesting that liability should be imposed on this basis. Therefore, the Court finds that Plaintiffs' claim fails as a matter of law.

Moreover, to the extent that Plaintiffs' claim is based on CSXT's alleged misrepresentations, the Court finds that Plaintiffs have not "state[d] with particularity the circumstances constituting fraud." See Fed. R. Civ. P. 9(b). Although Plaintiffs' complaint refers to misleading information, it does not identify the facts misrepresented, nor the time and place at which the allegedly information was disseminated. The Court thus finds that despite construing the complaint in the light most favorable to Plaintiffs and accepting their allegations as true, Plaintiffs' claim fails as a matter of law. See U.S. ex rel. Marlar v. BWXT Y-12, L.L.C., 525 F.3d 439, 444 (6th Cir. 2008) (noting that a complaint, "at a minimum, must allege the time, place, and content of the alleged

misrepresentation on which [the plaintiff] relied . . .") (internal quotations omitted)).

### B. "XVII. COMMON CARRIER"

In Plaintiffs' complaint under a heading entitled "XVII. Common Carrier," Plaintiffs allege that "Defendant Railroad is a common carrier and has violated laws regulating said carriers." (Compl. [DN 1] ¶ 69.) Plaintiffs further allege that Defendant "is obligated to pay all damages sustained by Plaintiff together with the costs of suit and reasonable attorney fees." (Id.) Defendant CSXT argues that the "Common Carrier" claim of Plaintiff's complaint, found in "Count XVII," fails to state a claim upon which relief can be granted. According to CSXT, Plaintiffs' allegations do not rise above "conclusory, non-factual assertions or legal conclusions." (Mem. in Supp. of Def. CSXT's Mot. for J. on the Pleadings [DN 25-1] 6.) Further, CSXT maintains that Plaintiffs have "failed to allege any duty running to them by virtue of CSXT's common carrier status." (Id.)

The Court agrees with CSXT that the "Common Carrier" claim must be dismissed. Kentucky courts have long held that the "duty of a common carrier *to its passengers* is to exercise the highest degree of care." Cody v. Nortof, 267 S.W.2d 403, 406 (Ky. 1954) (citing Louisville & N.R. Co. v. Johnson, L.R.A., 182 S.W. 214 (Ky. 1916) (emphasis added)). Here, Plaintiffs have failed to allege that Mrs. Pirtle was CSXT's passenger. Construing the facts in the light most favorable to Plaintiffs, it is clear that Mrs. Pirtle was a motorist who crossed the train's path. Plaintiffs have failed to cite, and the Court has been unable to find, any case under which it could be held that a duty runs to such a motorist by virtue of a company's common carrier status. Plaintiffs' claim fails as a matter of law.

The Court notes that in their response, Plaintiffs do not dispute these substantive aspects of CSXT's arguments. They point to no authority holding that a company's reliance on a public relations campaign gives rise to a special duty to Plaintiffs, nor do they point to any authority showing that

5

Mrs. Pirtle, as a motorist who crossed the train's path, was owed a duty of care because of CSXT's common carrier status. Instead, Plaintiffs argue that CSXT's motion cannot be granted since it fails to address claims for relief asserted by Plaintiffs. According to Plaintiffs, CSXT attacks "Counts XVI and XVII" of Plaintiffs' complaint—but fails to recognize that the complaint contains only two counts. Count One contains the claims of Tania Donahoo, the personal representative of Mrs. Pirtle's estate. It is titled "Negligence and Fault of All Defendants." (Compl. [DN 1] 4.) Count Two contains the claims of James Pirtle, Mrs. Pirtle's husband. It is titled "Loss of Consortium After Death Against All Defendants." (Id. at 22.) Plaintiffs thus argue that the sections CSXT refers to as "Counts XVI and XVII" are not counts at all. Instead, they are simply sub-sections within Count One that contain allegations related to, and integral with, Plaintiffs' negligence claim.[2]

However, the Court finds that a cursory review of Plaintiffs' complaint shows that several of Plaintiffs' sub-sections are essentially sub-counts that contain various theories of liability. For example, in the section entitled "VIII. Inadequate Audible Warning," Plaintiffs discuss the audibility requirements of 49 C.F.R. § 229.129, alleging that CSXT breached its duty to ensure that the train horn was properly sounded. (Id. ¶¶ 23–28.) Likewise, in the section entitled "IX. Inadequate Visual Warning," Plaintiffs discuss the requirements of 49 C.F.R. § 229.125, alleging that CSXT breached their duty to provide a reasonably safe crossing. (Id. ¶¶ 29–35.) It is the Court's belief that these sub-sections, as well as the sub-sections at issue, present alternative theories under which Defendant

---

[2] As an example, Plaintiffs highlight that their complaint alleges that CSXT is negligent for not properly instructing, supervising, and monitoring its employees. (See Compl. [DN 1] ¶¶ 62–64.) Thereafter, in the "Operating Lifesaver" sub-section, Plaintiffs assert that CSXT "used its Operation Lifesaver program to indoctrinate railroad employees with a belief system that there is nothing they can do to improve public safety at grade crossings." (Id. ¶ 66.) According to Plaintiffs, this conclusively shows that the sub-sections do not set forth specific claims for relief.

6

CSXT could be found liable. The Court thus finds Plaintiffs' argument unpersuasive.

Importantly, as Defendant CSXT notes, Plaintiffs have pointed to no authority preventing a court from entering judgment on less than all the claims at issue. In fact, the Court finds that federal authority actually supports its decision to enter judgment on portions of Plaintiffs' counts. See, e.g., Feeley v. NHAOCG, LLC, 62 A.3d 649, 657 (Del. Ch. 2012) (granting a defendant's motion to dismiss two sub-sections of Count I, the plaintiff's breach of contract claim); Nelson v. Clermont Cnty. Veterans Serv. Comm'n, 2012 WL 3929803, at *7 (S.D. Ohio Sept. 10, 2012) (recommending the dismissal of "portions of Counts Four and Six"); Dayco Prods., LLC v. Dorman Prods., Inc., 2010 WL 3855221, at *10 (E.D. Mich. Sept. 28, 2010) (noting that "rather than dismissing an entire count, the Court finds itself in the awkward position of having to dismiss specific paragraphs, or sentences within paragraphs within count four"); Lozar v. Birds Eye Foods, Inc., 678 F. Supp. 2d 589, 596 (W.D. Mich. 2009) (dismissing "portions of counts one and two" to the extent that the counts relied on negligence per se regarding the defendant's alleged violation of certain federal statutes); Jefferson v. Chestnut Gp., Inc., 2009 WL 302312, at *3 (D.S.C. Feb. 6, 2009) (dismissing "a portion of count three"). Accordingly, CSXT's motion for judgment on the pleadings is **GRANTED**.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant CSXT's Motion for Judgment on the Pleadings [DN 25] is **GRANTED.**

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: counsel of record

May 9, 2013